UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:26-MC-22466

IN RE APPLICATION OF
DEPARTMENT OF HOMELAND
SECURITY, IMMIGRATION AND
CUSTOMS ENFORCEMENT,

    *Petitioner*,

vs.

ANDRIY SHEPITSEN,

    *Respondent*.

_____/

**EMERGENCY PETITION FOR ENTRY OF ORDER PERMITTING INVOLUNTARY
ADMINISTRATION OF NUTRITION**

Petitioner, United States Department of Homeland Security, Immigration and Customs

Enforcement (ICE), files this *Emergency Petition for Entry of Order Permitting Involuntary

Administration of Nutrition* to Respondent Andriy Shepitsen.

**I.      Parties, Jurisdiction & Venue**

1.      Petitioner is the United States Department of Homeland Security, Immigration and

Customs Enforcement, an agency of the United States government.

2.      Respondent Andriy Shepitsen (Respondent) is a non-citizen lawfully in detention

at the Krome Service Processing Center (Krome), Miami, Florida. Respondent is in ICE custody,

pending the completion of his removal proceedings under the Immigration and Nationality Act.

3.      This Court has jurisdiction of this matter under 28 U.S.C. § 1345 and 8 U.S.C. §

1329.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b).

**II.     Factual Background**

5.      Respondent is a native and citizen of Ukraine, currently detained at Krome. *See* **Exhibit A**, Declaration of Assistant Field Office Director Charles Parra ("Parra Decl."), ¶ 4.

6.      On February 20, 2026, Respondent was transferred to Krome from the Glades County Detention Center. *Id.;* s*ee also* **Exhibit B**, Declaration of Manuel E. Lopez Diaz, M.D. ("Lopez Decl."), ¶ 4.

7.      As of today, Respondent is on day 44 of a hunger strike and has missed over 138 meals. Lopez Decl. at ¶ 6. His hunger strike began on or about February 20, 2026, while Respondent was detained. *Id.* at ¶¶ 4-6.

8.      Respondent states that he is on a hunger strike to protest his continued detention.

9.      Respondent's last weight was taken on April 9, 2026, which, at that time, evidenced a loss of 36.8 pounds or 16.07% of his initial, pre-hunger strike body weight. *Id.*

10.      A psychiatrist evaluated Respondent and found no evidence of a psychiatric condition causing him to refuse food or nutrition; rather, he appears to be operating under his own free will. Lopez Decl. at ¶ 11.[1]

11.      Respondent is fluent in English and has been counseled regarding the adverse health consequences of his continued hunger strike. *Id.* at ¶¶ 8-10; Parra Decl., at ¶ 6. Medical staff have repeatedly tried to persuade him to eat food and obtain adequate nutrition, to no avail. Parra Decl., at ¶ 6.

12.      Respondent has also been informed that relief from a court may be necessary to preserve his life and health if he continues to deprive himself of necessary nutrients, and that such

---

[1] This statement is not intended to convey that Respondent has no mental health issues, generally. Rather, this statement is intended only to convey that, based on a clinical evaluation, no discernable psychiatric condition is causing Respondent to refuse food or nutrition. He does have bipolar disorder, but that does not render him incapable of making informed decisions regarding whether to eat or drink. Lopez Decl. at ¶ 11.

relief may include involuntary administration of nutrition and, if necessary, feeding procedures. *Id.* at ¶ 7. Lopez Decl., ¶ 9.

13.     Respondent's continued hunger strike is jeopardizing his health and may lead to permanent bodily harm, including organ failure and/or death, if he does not consume sufficient calories to preserve his health. Lopez Decl., ¶¶ 17, 21.

### III.     Court intervention is medically necessary

14.     Despite Petitioner's best efforts, Respondent's continued refusal to consume sufficient nutrition voluntarily, requires immediate medical intervention to determine and monitor Respondent's current state and to prevent deterioration and serious medical complications, including potential injury, organ failure, or death. Lopez Decl., ¶¶ 12-20.

15.     Respondent's condition is expected to decline as his hunger strike continues. Between the 15th and 30th day of a hunger strike, a patient may suffer neurological symptoms which are severe enough to warrant hospitalization. Respondent is already exhibiting signs and symptoms of orthostatic blood pressure changes, which are caused by dehydration and may cause dizziness.  In addition, Respondent has had a decreased urinary output, which is indicative of both dehydration and hypotension. *Id.* at ¶ 16.

16.     If fasting and insufficient nutrition continues, Respondent risks permanent damage to his internal organs which has the potential to become life threatening. *Id.* at ¶ 18. Metabolic imbalance, if left untreated, will cause fatal arrhythmias and/or cardiac arrest. *Id.* Adding to the emergency nature of his condition, Respondent's loss of almost 18% of his pre-hunger strike body weight gives rise to the reasonable medical assumption that his condition is likely to result in his serious and permanent injury or death before IHSC is able to respond to the same. *Id.* at ¶ 17.

17.     Accordingly, it is the professional medical judgment of Respondent's treating

physician at Krome that involuntary administration of nutrients is necessary at this time. *Id.* at ¶¶ 19-22.

18.     To ensure Respondent's health, welfare, and safety—should he refuse to cooperate with the authorized administration of involuntary nutrition—medical soft restraints will be required to immobilize Respondent and prevent unnecessary injury to both Respondent and to medical staff. *Id.* at ¶ 23.

**IV.     Maintaining security and good working order at Krome**

19.     As Respondent's custodian, ICE has an obligation to preserve his health while he is in ICE custody. *See* attached Memorandum of Law.

20.     The decline in Respondent's health and well-being brought on by his refusal to eat and drink sufficient water poses a serious threat to the security and good order of the Krome detention center. Parra Decl., ¶¶ 8-9.

21.     In order to preserve the life of the Respondent and maintain security and order at Krome, Petitioner needs to involuntary provide nutrition to preserve and sustain the life of Respondent. Lopez Decl., ¶ 21.

22.     Given Respondent's refusal to consent to his own medical care and the resulting uncertainty regarding his current medical state and the true effects of his 44-day hunger strike, it is possible his lab results will evidence more serious strike-induced medical conditions. Respondent may need to be transferred to Larkin Community Hospital, Inc. in Miami, Florida ("Larkin") for continuity of care. Petitioner therefore requests that any order granting this petition also apply to medical staff at Larkin.

23.     Finally, Petitioner requests that any order granting the relief sought in this Petition remain in effect until such time that Respondent's food and water consumption is voluntary,

continuous, and sufficient as determined by the medical staff at ICE or Larkin, in their clinical judgment and in consideration of objective data, including but not limited to Respondent's lab results and weight gain, or, alternatively, for at least 60 days.

**WHEREFORE**, Petitioner prays the Court:

a.　　　Find that an emergency situation exists, requiring immediate action;

b.　　　Enter an order authorizing ICE, acting through competent medical authority, including Larkin and any of its staff physicians, to involuntarily administer nutrition to Respondent to prevent further deterioration of his health;

c.　　　Enter an order authorizing ICE, through competent medical authority, including Larkin and any of its staff physicians, to restrain Respondent with medical soft restraints *if he resists or asserts that he intends to resist* the administration of nutrition;

d.　　　Permit the order, in the form attached hereto, to remain in place until such time that Respondent's food and water consumption is voluntary, continuous, and sufficient as determined by the medical staff at ICE or Larkin, in their clinical judgment and in consideration of objective data, including but not limited to Respondent's lab results and weight gain; and

e.　　　Enter such further relief as the Court deems appropriate under the circumstances.[2]

Respectfully submitted,

---

[2] Although there is persuasive district precedent (discussed in the attached memorandum of law) for the entry of fulsome relief on an ex parte basis, should the Court desire to hold a hearing, Petitioner respectfully requests that the Court enter an ex parte order of limited duration allowing Petitioner to intervene medically as soon as possible to prevent further deterioration to his health. Counsel also requests that any scheduled hearing take place remotely, as Respondent is not currently (and will likely not be in the near future) in a medically stable state that would allow him to be transported to downtown Miami. For any hearing, although Respondent speaks Spanish, his native language is Russian. Respondent would require the services of a Russian interpreter.

**JASON A. REDING QUIÑONES**
**UNITED STATES ATTORNEY**

**/s/ Payton H. Poliakoff**
Payton H. Poliakoff
Assistant United States Attorney
Fla. Bar. No.: 1025078
99 N.E. 4th Street, Suite 300
Miami, Florida 33132-2111
Tel: 305.961.9176
Email: Payton.Poliakoff@usdoj.gov

**/s/ John Ghannam**
John Ghannam
Assistant United States Attorney
Fla. Bar. No.: 1031575
99 N.E. 4th Street, Suite 300
Miami, Florida 33132-2111
Tel: 305.961.9030
Email: John.Ghannam@usdoj.gov

*Counsel for Petitioner*

(*Certificate of Service on Following Page)*

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing (with all attachments) was hand-delivered on April 9, 2026 to Respondent at Krome, where he is legally detained. It was also served that same day, as a courtesy, on Respondent's counsel in his underlying immigration proceedings, Katherin H. Blankenship, via email to: katie@blankenshiplawgroup.com.

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

**/s/ Payton H. Poliakoff**
Payton H. Poliakoff
Assistant United States Attorney
Fla. Bar. No.: 1025078
99 N.E. 4th Street, Suite 300
Miami, Florida 33132-2111
Tel: 305.961.9176
Email: Payton.Poliakoff@usdoj.gov

**/s/ John Ghannam**
John Ghannam
Assistant United States Attorney
Fla. Bar. No.: 1031575
99 N.E. 4th Street, Suite 300
Miami, Florida 33132-2111
Tel: 305.961.9030
Email: John.Ghannam@usdoj.gov

*Counsel for Petitioner*