UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:26-MC-22466

IN RE APPLICATION OF
DEPARTMENT OF HOMELAND
SECURITY, IMMIGRATION AND
CUSTOMS ENFORCEMENT,

     *Petitioner*,

vs.

ANDRIY SHPITSEN,

     *Respondent*.

_____/

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF ITS EMERGENCY
PETITION FOR ENTRY OF ORDER PERMITTING
<u>INVOLUNTARY ADMINISTRATION OF NUTRITION</u>**

Petitioner United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), through undersigned counsel, files this Memorandum of Law in support of its *Emergency Petition for Entry of Order Permitting Involuntary Administration of Nutrition*, and states:

    **I.**    **Factual background**

Respondent Andriy Shepitsen (Respondent) is a native and citizen of Ukraine who is on day 44 of a hunger strike and has missed over 138 meals. *See* **Exhibit B to the Petition**, Declaration of Manuel E. Lopez Diaz, M.D. ("Lopez Decl."), ¶ 6. Respondent is in immigration removal proceedings and is legally detained at the Krome Service Processing Center, Miami, Florida (Krome), in the custody of U.S. Immigration and Customs Enforcement (ICE). *See* **Exhibit A to the Petition**, Declaration of Assistant Field Office Director Charles Parra ("Parra Decl."), ¶ 4.

Respondent is engaged in a hunger strike in protest of his continued detention in a manner which is likely to result in his own serious bodily injury and/or death. Lopez Decl., ¶¶ 7, 18-9; *see also* Parra Decl., ¶ 6. Medical literature reflects that metabolic imbalances, caused by fasting, is likely to result in permanent bodily injury and/or death once weight loss reaches 18% of a patient's initial weight. Lopez Decl., ¶ 12. As a result of his hunger strike Respondent has lost approximately 36.8 lbs. (16.07%) of his body weight over the last five weeks, which greatly exacerbates his risk of permanent bodily injury or death. *Id*. Respondent additionally exhibits symptoms of orthostatic blood pressure changes caused by dehydration resulting in dizziness, light headedness, and decreased urinary output.

Respondent is fluent in English. Parra Decl., ¶ 6; *see also* Lopez Decl., ¶ 8. Throughout the course of Respondent's hunger strike staff at Krome have advised Respondent that his continuing his hunger strike seriously jeopardize his health and may result in his death. Parra Decl., ¶ 6; *see also* Lopez Decl., ¶¶ 9-10. Notwithstanding, Respondent expresses commitment to continue his hunger strike. *Id.* Respondent's commitment to his hunger strike, exacerbated by the aggravating factor of inappropriate hydration, will result in permanent damage to his internal organs and if left untreated will cause fatal arrhythmia and/or cardiac arrest. Lopez Decl., ¶ 18.

Respondent has undergone a psychiatric evaluation at Krome, which found no evidence of a psychiatric condition causing him to refuse food or hydration; rather, he appears to be operating under his own free will. Lopez Decl. at ¶ 8.[1]

II.   **Respondent has no right to be free from the medical care necessary to sustain his health and well-being**

---

[1] This statement is not intended to convey that Respondent has no mental health issues, generally. Rather, this statement is only intended to convey that, based on clinical evaluation, no discernable psychiatric condition is causing Respondent to refuse nutrients.

Respondent is in the custody of ICE, within the Miami Field Office. His legal status, insofar as his detention is concerned, can be likened to that of a pretrial detainee since he is not being held pursuant to a sentence of incarceration for the commission of a crime. *Bell v. Wolfish*, 441 U.S. 520 (1979). As his custodian, ICE is responsible for providing him with such basic necessities as food, living space, and medical care that is consistent with the due process clause. *Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir.), *cert. denied*, 475 U.S. 1096 (1985); *see also*, 8 U.S.C. § 1231 (detention authority).

ICE has a compelling interest in preserving the life of Respondent. Since Respondent has chosen to engage in a hunger strike, ICE is obligated to monitor his medical condition closely to ensure that his health is not jeopardized by the lack of nutrients. At this time, it is the professional medical judgment of Respondent's treating physician at Krome that administration of involuntary nutrition is necessary to monitor and preserve Respondent's life. Lopez Decl. at ¶¶ 19, 21.

Respondent has no right, constitutional or otherwise, to be free from life-saving medical interventions such as the involuntary administration of nutrition. In *Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170 (2d Cir. 1998), the Second Circuit upheld a district court's entry of a force-feeding order against a civil contemnor, who was on a hunger strike. The contemnor had been held in contempt by the district court, who refused to testify before a grand jury despite being granted immunity. *Id.* at 171. The Second Circuit, after reviewing the force-feeding order, stated "we, like the majority of courts that have considered the question, hold that such an order does not violate a hunger-striking prisoner's constitutional rights." *Id.* at 172 (citations omitted). The appellate court took note that while the civil contemnor had been convicted of no crime, it recognized that "the institution where

he is housed is still responsible for his care while incarcerated. Other compelling governmental interests, such as the preservation of life, prevention of suicide, and enforcement of prison security, order, and discipline, outweigh the constitutional rights asserted by Doe in the circumstances of this case." *Id.*

In *In re Sanchez*, 577 F.Supp. 7 (S.D.N.Y. 1983), the district court granted the government's application for an order to force-feed a civil contemnor, who had been held in contempt for failing to testify before a grand jury. In doing so, the court noted that Mr. Sanchez admitted his hunger strike was an attempt to "bring maximum pressure upon the Judge who will ultimately rule on his motion to vacate the contempt order." *Id.* at 9. Further, the court observed that prolongation of the hunger strike would soon render Mr. Sanchez physically or mentally incapable of testifying before the grand jury, thereby rendering further coercive sanctions futile. *Id.* In one sense, the district court noted, "Mr. Sanchez is attempting to escape from prison and to frustrate the lawful authority of the courts. This is a purpose that we cannot condone." *Id.*

In the specific context of a non-citizen in immigration detention, numerous courts in this District have entered orders authorizing ICE to involuntarily administer nutrients to immigration detainees engaged in a hunger strike in protest of their continued detention, like Respondent here. *See e.g. Dep't of Homeland Sec. v. Ayvazian*, 15-23213-CIV, 2015 WL 5315206 (S.D. Fla. Sept. 11, 2015) (Scola, J.).[2] The *Ayvazian* court, citing Supreme Court precedent, noted that "custodial institutions may implement regulations that infringe upon a detainee's

---

[2] Petitioner relies upon the *Ayvazian* decision and other decisions from this District, below, as persuasive authority only. Petitioner acknowledges a district court is not bound by another district court's decision, or even by an opinion by another judge of the same district court. *See e.g. Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991).

constitutional right, as long as the regulations are 'reasonably related' to legitimate security interests," and that "[c]ourts look to several factors in deciding whether a regulation is reasonable. *Id.* at *4 (citing *Turner v. Safley*, 482 U.S. 78, 91 (1987)). Those factors include:

> (1) whether there is a valid, rational connection between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an exaggerated response to prison concerns.

*Id.* (citing *Hakim v. Hicks*, 223 F.3d 1244, 1247-48 (11th Cir. 2000)).

> Applying these factors, the *Ayvazian* court found:

> there is a valid, rational connection between compulsory medical examinations and force-feeding the Respondents and ICE's interests in keeping the Respondents alive in good health and maintaining order and security at Krome. The Court also concludes that the Respondents have alternative, less disruptive means to protest their detention and exercise their First Amendment rights. They may communicate with the media and others in the community to complain about their detention, and they may appeal the adverse immigration decisions in their cases. Next, the Court finds that the Respondents' hunger strikes have already, and will continue to have a heavy administrative burden on the staff at Krome, other detainees at Krome, and ICE's allocation of resources in general. Finally, the Court concludes that compulsory medical examinations and force-feeding the Respondents is not an exaggerated response to their hunger strikes.

*Id.*

The *Ayvazian* court correctly noted that the respondents' hunger strike left ICE with only three options: "(1) allow them to die, (2) force-feed them, or (3) submit to their demands and release them." *Id.* Because "[o]ptions 1 and 3 are not reasonable," the *Ayvazian* court found ICE was left with the "single option of involuntarily administering nutrients and hydration" as "the only viable response." *Id.*

The *Ayvazian* court relied on prior decisions of district courts that have ruled similarly. *See e.g. In re Fattah*, 2008 WL 2704541 (M.D.Pa. Jul. 8, 2008); *In re Soliman*, 134 F.Supp.2d

1238 (N.D. Ala. 2001), *vacated on grounds of mootness*, *Soliman v. United States*, 296 F.3d 1237 (11th Cir. 2002).[3] In *Soliman*, the district court engaged in a lengthy analysis and noted the government's interest in the preservation of life. *Id.* at 1253. Like in *Ayvazian,* the *Soliman* court found the respondent had alternative means of protesting his detention, which included correspondence, telephone calls, and contacts with the media. *Id.* The *Soliman* court also found that force feeding was not an "exaggerated response" to penal concerns because it was the only way to sustain the life of a hunger striking prisoner. *Id.* at 1254. The court therefore concluded that the government's limitations on Soliman's First Amendment rights were reasonable. *Id.*

The *Soliman* court also analyzed the government's action in force-feeding Mr. Soliman in terms of his right to privacy. *Id.* at 1254-58. The court relied on the federal civil contemnor hunger strike cases cited above (*In re Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170 (2d Cir. 1998); *In re Sanchez*, 577 F.Supp. 7 (S.D.N.Y.1983)), as well as state court decisions upholding the right to force-feed hunger striking prisoners (*White v. Narick*, 292 S.E.2d 54 (1982); *Von Holden v. Chapman*, 450 N.Y.S.2d 623 (N.Y.App.Div. 1982)) and concluded that the interests asserted by the government—maintenance of order and safety in the detention facility, preservation of life, and the onerous administrative burden presented by a hunger striking detainee—were legitimate penological objectives. *Id.* at 1258. Further, the court found that force feeding Mr. Soliman was warranted, *so long as only nasogastric tube or intravenous feeding procedures were employed*. *Id.* at 1259. This is precisely the relief Petitioner

---

[3] Soliman appealed the district court's order to the Eleventh Circuit. While his appeal was pending, he was removed to Egypt. *Soliman v. United States*, 296 F.3d at 1241-42. The Eleventh Circuit concluded that the case was moot due to his removal, since he was no longer in detention, and was no longer being force-fed by the legacy Immigration and Naturalization Service. *Id.* at 1243. The appellate court therefore dismissed the appeal, and vacated the district court's order. *Id.* at 1243-44.

requests here.

*Ayvazian* and the additional authority cited above have been relied on by judges in this District in granting the relief Petitioner seeks here, including without conducting a hearing at all. *See e.g. Dep't of Homeland Sec. v. Correa*, Case No. 1:24-mc-24762-CMA, D.E. 4 (S.D. Fla. Dec. 6, 2024) (Altonaga, C.J.)*;  Dep't of Homeland Sec. v. Ghani*, Case No. 1:23-mc-23652-CMA, DE 18 (S.D. Fla. June 28, 2024) (Altonaga, C.J.); *Dep't of Homeland Sec. v. Kumar*, Case No. 1:20-mc-21009-UU, D.E. 8 (S.D. Fla. March 25, 2020) (Ungaro, J.).[4] This Court therefore has clear authority to grant Petitioner's request for an order permitting ICE, acting through competent medical authority, to involuntarily administer nutrients to preserve his life. Respondent, a detained non-citizen, has no right to refuse food or medical care, as they necessary to preserve his life, not to mention the security, morale, and good working order of Krome. Parra Decl., ¶¶ 8-9.

### III.   Right to Counsel[5]

Respondent is not represented by counsel in the above-styled matter but is represented by counsel in his removal proceedings. Respondent's counsel of record in his removal proceedings will be served with the Petition as a courtesy. Petitioner includes the following memorandum of law showing that Respondent has no right to Court-appointed counsel in this civil matter.

#### A.  *Parties generally have no right to counsel in civil actions*

---

[4] In recent cases, including *Ghani* and *Kumar*, the mere entry of an order (ex parte) authorizing ICE and/or Larkin Hospital to involuntarily administer hydration, nutrients, and laboratory testing resulted in the hunger striking detainee voluntarily consenting to laboratory testing and/or voluntarily eating and drinking, so that the authorized use of medical soft restraints never became necessary.

[5] Some judges of this District have required a memorandum of law on right to counsel, to be filed after issuance an ex parte order granting ICE's petition.

The instant case is a civil action instituted by ICE, seeking a Court order to permit ICE, as Respondent's custodian, to involuntarily administer nutrition. In *Bass v. Perrin*, 170 F. 3d 1312 (11th Cir. 1999), the Eleventh Circuit observed that "[a] plaintiff in a civil case has no constitutional right to counsel. A court may, however, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff. The district court has broad discretion in making this decision and should appoint counsel only in exceptional circumstances." *Id.* at 1320 (citations omitted). *See also Robinson v. United States*, 484 Fed. Appx. 421, 422 (11th Cir. 2012) (citing *Wahl v. McIver*, 773 F. 2d 1169, 1174 (11th Cir. 1985) ("Appointment of counsel in a civil case is not a constitutional right, but a privilege that is justified only by exceptional circumstances.").[6]

The principle is the same when the pro se party is the defendant/respondent, as in this case. In *Federal Trade Commission v. Lalonde*, 545 Fed. Appx. 825 (11th Cir. 2013), the Eleventh Circuit found that a Magistrate Judge did not abuse his discretion in denying defendant's request for counsel in an FTC action claiming he violated the Credit Repair Organizations Act and Telemarketing Sales Rule. The Magistrate Judge denied the motion, finding that defendant had "intimate familiarity" with the facts of the case and had demonstrated that he could present his defense to the court. *Id.* at 831. Similar here, apart from Respondent's medical team at Krome, no one is more intimately familiar with the facts of Respondent's hunger strike and his current medical state than Respondent himself.

Similarly, in *Fowler v. Jones*, 899 F. 2d 1088 (11th Cir. 1990), the Eleventh Circuit

---

[6] As a point of clarification, Section 1915 is the statute dealing with petitions to proceed *in forma pauperis*. It authorizes a court to "request" counsel to appear on a party's behalf, but not to compel it. *See e.g. U.S. v. 30.64 Acres of Land, More or Less, Situated in Klickitat County, State of Wash.*, 795 F.2d 796 (9th Cir. 1986) (statute governing proceedings in forma pauperis does not authorize appointment, in the form of mandatory assignment, of counsel to involuntary service).

observed that appointment of counsel in a civil case was a privilege "that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained [legal] practitioner." *Id.* at 1096 (citations omitted).

There are no exceptional circumstances in this case to justify the appointment of counsel to Respondent. Respondent has voluntarily chosen to engage in a hunger strike which now threatens his life and the good working order of Krome. While challenging in some sense, the facts and law of this case are quite straight-forward. As Respondent's custodian, ICE has an obligation to provide for respondents' health and safety. Indeed, ICE has a compelling state interest in preserving Respondent's life and health, and in maintaining security and discipline at Krome. These issues are neither novel nor complex. *See Aamer v. Obama*, 742 F. 3d 1023, 1040-41 (D.C. Cir. 2014)("Thus, the overwhelming majority of courts have concluded, as did Judge Collyer and as we do now, that absent exceptional circumstances prison officials may force-feed a starving inmate actually facing the risk of death. Petitioners point to nothing specific to their situation that would give us a basis for concluding that the government's legitimate penological interests cannot justify the force-feeding of hunger-striking detainees.") (citations omitted).

Here, ICE's need to involuntarily administer nutrition to Respondent is based on the medical opinion of Respondent's treating physician, Dr. Lopez, that Respondent is a danger to himself by continuing his hunger strike and refusing to consume sufficient nutrition and water. There are no exceptional circumstances to justify the appointment of counsel under these circumstances. *See e.g. United States v. Loughner*, 672 F.3d 731, 757 (9th Cir. 2011) (rejecting the necessity of counsel argument of a pretrial detainee at an involuntary medication hearing, noting "[i]t is less than crystal clear why *lawyers* must be available to identify possible

errors in *medical* judgment.") (citations omitted; emphasis in original).

### B. *Respondent's pending removal proceedings are civil in nature*

Respondent's status as a non-citizen detained at Krome subject to removal proceedings does not change the analysis as to whether he is entitled to counsel in this civil matter. 8 U.S.C. § 1362 provides:

> In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

As interpreted by the Courts, Section 1362 provides a right for non-citizens in removal proceedings to retain their own private counsel, but not the right to have counsel appointed to them. *See e.g. Flores-Panameno v. U.S. Attorney Gen.*, 913 F.3d 1036, 1040 (11th Cir. 2019)("8 U.S.C. § 1362 provides that aliens have the right to retain private counsel in their removal proceedings."). Because Respondent has no right to appointed counsel in his removal proceedings, no right to counsel in this matter can be premised tangentially on that basis.

### C. *The Sixth Amendment does not apply to civil matters*

Finally, the Sixth Amendment can be no source of a right to appointed counsel for Respondent in this case either. The instant case is a civil action, and not part of any criminal process. *See Iowa v. Tovar*, 541 U.S. 77, 80 (2004) ("The Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process."); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984) ("A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry, though entering or remaining unlawfully in this country is itself a crime.").[7]

---

[7] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 eliminated the

Respondent therefore has no right to appointed counsel and there are no exceptional circumstances that would justify the Court requesting counsel to appear for Respondent in this civil matter.

---

distinction between "deportation" and "exclusion," placing both procedures under the heading "removal." *Al Najjar v. Ashcroft*, 273 F. 3d 1330, 1337 n. 2 (11th Cir. 2001). In addition, as used in this memorandum (and in general), the terms "alien" and "non-citizen" are synonymous, with "non-citizen" being the preferred, 21st Century terminology.